Good morning, Your Honor. May it please the Court, Laurie Schoenberg on behalf of the petitioner-appellant. I'd like to reserve two minutes per rebuttal on this case. Okay. Your Honor, a changed circumstance which materially affects asylum eligibility is one that increases in a non-trivial way the applicant's likelihood of success in his application, one that makes a claim for protection much stronger, thus prompting the late filing. A changed circumstance does not have to create a new basis for persecution or be an entirely new conflict in an asylum applicant's country of origin. A changed circumstance can simply provide further evidence of the type of persecution already suffered or support a theory... But it really does have to be changed, doesn't it? It does have to be changed. It has to... I mean, we can't have a continuing conflict in a country forever and then just come in and say, well, we had this latest incident in the total conflict, and that makes a change. That isn't enough, is it? It's got to have something a little bigger than that. It has to be a little bit bigger than that. I mean, in fact, in the latest case, the one that's most quoted lately, there was a huge difference in change of conditions cited in that case by the author of the opinion, and joined by Judge Reinhart, right? Yes. However, you know, in other cases... And we're not really talking about change conditions in the country right here in this case. We're not. We're talking about change conditions in a family, right? Well, we're talking about change conditions in the family supported by changes in country conditions in the country here in this case. But the change conditions in the country really didn't change, as I understand it. And I guess my biggest question to you is, the IJ said, some must show that the respondent members of his family who have been killed over the years has been a continuing change of events, and there's no testimony to pinpoint any particular incident that might flag an exception to the one-year filing rule. Well, I read and I said there was an uncle killed in 2001. There was a cousin killed in 2002. Another cousin killed in 2002. An uncle killed, arrested, and detained. Not killed, sorry. Arrested and detained, and we can't find him anymore for organizing protests and rallies in 2003. An uncle escaped the mob in 2004. A brother narrowly escaped death in 2004. A half-brother was threatened in 2005. Now, is there any change? I'm kind of thinking the IJ might have been correct. There's nothing to suggest any change here. Since 2001, we've had killings. Well, first of all, Your Honor, the petitioner appellant in this case actually entered the United States in 1981. The circumstances that you just cited all started occurring in 2001. That's correct. So it's a change from earlier. Well, it is a change from earlier, but if I'm going to give them a year from the change, it seems to me one would go back to 2001, and he didn't get it done then. Well, Your Honor, I would respect that. He didn't file until 2005 after he'd been stopped at the border. Your Honor, I would respectfully submit that the attacks on his brother and on his half-brother were materially different than even the attacks on the rest of his family. Well, they weren't as bad. I mean, the others were killed. Yes, but ---- I can't say that they materially changed bad, can I? Well, with respect to his brother, the only reason that he escaped death was because he was able to, according to his brother, scale the wall of the premises in which he was attacked. Well, I understand that, but again, if I look at all these events, I'm just trying to see what is the standard to review here? The IJ, what deference do I have to give the BIA in this opinion? Don't I have to find if there's substantial evidence to sustain what they were doing? And they say, well, I read what they said. Respondent members' family have been killed over the years, and I don't find anything that makes it any different, nothing to pinpoint. In fact, it seems to be they've been killed since 2001. It seems exactly what the IJ said. Well, Your Honor, first of all, we really have to start with the legal standard that the immigration judge applied. And that's my question. Did the IJ apply the correct legal standard in requiring that the petitioner has to pinpoint a particular event instead of looking at the totality of the circumstances? No, Your Honor, she didn't. She didn't. She said that he had to show that the respondent's member of his family who had been killed over the years has been a continuing change of events, and there is not testimony to pinpoint any particular incident that might flag an exception to the one-year deadline. So what she was saying then was, hey, all this is the same. There has been no change in circumstances. Actually, it's internally inconsistent because on the one hand, she's looking for a continuous change of events. On the other hand, she's looking for a particular incident that would flag an exception to the one-year deadline. Well, but doesn't the reason she say that is because you have to have a change in circumstances? So, again, we have to look at what have been the circumstances over time, as the new case would suggest. What have been the circumstances over time, and what is it that makes it a change? And that's what she's saying. That's what the IJ said. I can't find where the change is. Well, Your Honor, the Ninth Circuit's cases, at least in Fakhri and Bahura, seem to suggest that a petitioner or appellant like Mr. Osiaka doesn't have to have a eureka moment. He just has to show that the change in circumstances would increase the likelihood that he would be granted relief. Now, why is the last half-brother being threatened in high school because of his faith, such a change in circumstances from his uncle being killed or his cousin being assassinated or his cousin being killed by the mob, all because of his religion? Your Honor, I really think there are two circumstances here among all the incidents of persecution in his family that amount to changed circumstances. The first concerning his brother in 2004 is materially different than the prior attacks on his family. Why? Because in the brother's case, he was an expatriate for many years. He was a Belgian citizen. He had returned to his family in Nigeria just to deliver diabetes medication to his father. And within a three-day period, he was attacked by what Mr. Osiaka, the petitioner, described as an Islamic jihadist mob, which he only escaped by scaling the walls of the premises. This is the brother, Chris? His brother is Chris. In addition to that, Mr. Osiaka testified that his brother had been writing newspaper articles from abroad that criticized the Nigerian political situation, including the implementation of Sharia law in Nigeria. Likewise, Mr. Osiaka had engaged in political activities abroad, which is a recognized regulatory exception to the one-year filing deadline. Indeed, on page 185 of the certified administrative record, he attested to his attendance at and speaking against the Nigerian political situation as a member of the Igbo World Congress in California. Is it true that your client has been granted withholding and cat relief already? Yes. Counsel, it's Judge Gould, if I could just interject for a moment. It would help me if I could hear what you have to say in reply to the government. So if you could save a minute for reply, I would appreciate that. Yes, Your Honor. Would you like me to stop now because I have a minute and 33 left? That's what he suggested. Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Julia Johns and I represent the Attorney General of the United States. One thing particularly to note that Judge Duke talked about is what's the legal standard here? If you look at the statute, the statute says that the Attorney General may waive the application of the one-year bar where the applicant demonstrates to the satisfaction of the Attorney General, in this case the IJ, that changed circumstances existed which materially affected his eligibility for asylum. That means that he has to establish that these changed circumstances materially affected, that now he would be eligible for asylum. In this particular case, he failed to do so. As Judge Newman pointed out, he went through a slew of events that happened. In 1989, he realized he was out of status, so he applied for some sort of legalization. Counsel, the language that you just quoted, does it support the IJ's finding that the applicant here has to demonstrate or has to pinpoint a particular event, or is it enough that the IJ needed to look at all the events cumulatively in determining that changed circumstances exist here? It's the first, Your Honor, because exactly that, because he carries that burden. In this real case, we can't decipher what event. When he talks about his uncle being murdered in 2001, he said he was aware of this happening a month after it happened, and yet he didn't do anything, and he was out of status. He talked about his uncle being detained in 2002, 2003. Again, he said he was aware of it, and he didn't do anything that happened. He talked about his cousins being murdered in 2002, one assassinated in 2000, no, two killed in 2002, and his brother. And again, nothing happened. So the fact of the matter, we can't decipher when he formed what circumstances actually materially affected his eligibility, and it's his burden to establish that. Didn't he testify when he was asked in cross-examination that his brother's incident really scared him, and isn't that sufficient, at least in the record, to demonstrate that if one has to pinpoint a particular event, that that was the event that he pinpointed? That's not what he's going on without his testimony. His testimony said he didn't apply for asylum until after he got picked up. He did say, yeah, I was afraid, but then he continued to go on about his business in that particular aspect. So he didn't even say that what happened to his brother materially affected him. He didn't say that he was afraid to return at that particular point. He just said, I was afraid, and I told my brother, it's not a good idea for you to return back home. But again, he didn't do anything. And his own testimony said, I didn't file until after I was detained by ICE and after I was picked up, and then he filed defensively. I think Judge Gould would like to question you. Did you have a question, Judge Gould? It sounded to us like an ear. I'm sorry. Someone was knocking on the door here, and I had to get my law clerk to go ahead. Thank you. So even with regards to his brother. But he did testify that his brother, that what happened with his brother. I do have a question. I do have a question, but I was going to pose it a little later after you had a chance to lay out your argument. Okay. Let me just follow through with my question. He did testify that he was scared, and the IJ did make a credibility finding in finding him credible. Should we accept his testimony that he was afraid as to what happened with his brother? As we put it out in our brief, if you say that that incident was the circumstance that materially affected his eligibility for asylum, then it needs to be remanded to determine whether or not he applied within a reasonable period of time, given those circumstances. And that analysis wasn't done in this case, because the IJ didn't reach that analysis. She didn't determine whether or not he applied within a reasonable period of time. Exactly, right. Because she determined that we couldn't decipher, given the slew of incidents that he testified to, we couldn't decipher which incident materially affected his eligibility. You can't go through and he didn't make the connection between each of these incidents and carried his burden forth and said, this is the incident that affected my eligibility. So when you have – if you look at – Is it the government's position that you can have a string of events that are all pretty bad, that they are really quite bad and it all relates to Christian belief, but that the applicant himself, even though there's a string of events that go along, that the applicant himself can determine when, in fact, he's affected? If I understand your question correctly, and please correct me if I didn't, he has to show – if he's going to show his eligibility for asylum, he's got to show he's got a well-founded fear. So he has to pinpoint that he has this subjective, genuine fear of persecution, that he fears if he's returned, he would, you know, be persecuted. So if I understand your question correctly, the answer is yes, then, because you have a slew of events that's tragic and sad, but until you show your eligibility for asylum, we don't know when the clock starts for you. So you can go through this whole slew of events that are tragic, but you yourself may not have that subjective intent, that you don't fear persecution. But the fear of persecution and subjective intent is only one part of the burden, correct? That's correct. Then there's an objective. Right, that is correct. So you're suggesting that on change conditions, that it has to do with the subjective intent determination? It has to do with both, but particularly you're lacking – I mean, the lacking here is so glaring that he didn't establish his subjective intent. He didn't establish – if you follow the analysis that this court did in Fakhry, they talked about the subjective state of mind that plays a role in this. We don't know his objective state of mind when he intended to apply for asylum, and we also don't know his subjective fear of persecution. We can't decipher any of this given his testimony. He goes through these events. He talks about he was well aware of the fact of it. He even talked about the fact that he became politically active in the United States. In 1999, he said he started attending meetings that discussed the political and religious affairs crisis in Nigeria. So you have from 1999 until 2004 or 2005 a slew of events that we just can't decipher, which is the circumstances that start to clock for him to understand, you have the subjective fear here. The fact of the matter, Congress intended to have these applicants come forth within a one-year period, and they provided for the exception to the rule, and that exception being that you have to establish you carry the burden to the satisfaction of the immigration judge that you have – that changed circumstances occurred in your country that materially affected your eligibility for asylum. Okay. Counsel, Judge Gould, if I can give you my questions now, and I'll try to keep them simple. First, am I correct that the law does not require there to be a particular incident, an identified incident that precipitates the asylum eligibility? Yes. The law doesn't require you pinpoint, but you have to be able to establish that the circumstances materially affect it. So you could have – I'm sorry, go ahead. No, I get it. I just wanted to know that. And second, would it be correct that the law does require that from whatever combination of events, that his perceptions, subjective impressions, to use Judge Smith's phrase, that they change? Does he have to show a time when his subjective views changed? In this particular case, he would. If you look at the prior cases this Court's talked about, those applicants, being very fact-specific in this case, those applicants came to the United States already having the intent to apply for asylum. They already had a fear of persecution because they had been previously persecuted. You don't have that in this case, so given the fact of the matter is we don't know his intent, we don't know the fact that since he came in 1981, we don't know, we can't pinpoint his intent, then I believe I'm answering your question. Correct me if I'm wrong, but the answer is yes. But are you suggesting that an applicant to apply for asylum to demonstrate a subjective prong would have to come to this country with the intent to apply for asylum? Oh, no, no, no. No, that's not what I'm suggesting. I'm saying the facts of the case that this Court has decided, being very fact-specific, in those factual scenarios, those applicants did, and what the analysis came forward with what the Court said was it doesn't matter if he came forward with an intent. It's the circumstances that materialized that affected his eligibility. So he could have a weak or nonexistent application at the time of entering, but the fact of the matter is at some point that weak or nonexistent claim has to formulate, has to form, and he has to develop that subjective intent to, I mean, not subjective intent, that it's subjective fear of persecution, which is one of the elements required to establish a well-founded fear. So I hope I answered your question. Yes, you did. Thank you. Okay. I see the amount of time, Your Honor, so thank you. Thank you. Thank you. Thank you. So a changed circumstance which materially affects asylum eligibility does not have to make somebody eligible for asylum when they were not eligible before. It just has to be one that increases in a non-trivial way the applicant's likelihood of success in his application. The law does not require, as Judge Gould pointed out, a particular incident that precipitates the asylum filing. It does not require, as the FOCRI court put it, a eureka moment. The government But it does have to, as I understand, you do have to have your subjective intent, if you will, or your subjective fear change as a result of something, don't you? Your Honor, the FOCRI court has said that a person's continuous subjective intent to apply for asylum has no bearing on the analysis of whether they would be eligible to avail. Well, that's why I'm trying to figure out, that's why I'm trying to get you to help me figure out what it is that precipitates it. Otherwise, it seems to me that what you're saying is that one can forever not do anything, but then when one is arrested or stopped, one can say, oh, the last change of events made me really fear. Your Honor, the Vahoura case indicates that an applicant may subjectively fear persecution and may have even had a meritorious asylum application at an earlier point, but an asylum applicant can wait to see if circumstances change, can wait for their asylum application to mature, and can wait until the circumstances become much stronger, thus probably delaying filing. If that's true, then how do I get around what Judge Kaczynski said in that case in his dissent, which said the changed circumstances overwhelms the whole of the statute? What he's suggesting is that the statute, if you're going to say that the applicant can do whatever he wants, whenever he wants, and do it whenever he thinks so, regardless of the circumstances out there in the world, it's just whatever he says is the last stage. Why is not the statute or the one-year bar just not a bar anymore? Well, Your Honor, he has to show, in addition to showing some subjective change, that the change materially affected his asylum eligibility, in other words, made it more likely that his claim would be granted. And in this particular case, the Petitioner-Appellant actually did pinpoint an incident, assuming that that's even a requirement here. By his own testimony, the Petitioner said that he didn't feel the need to apply for asylum, quote, except when issues arose. He stated on page 183 of the certified administrative record that the one that really got me was my brother when he traveled to Nigeria from Belgium. They came to our house in Jos, the crazy jihadist. Also, three days after his arrival, he was lucky to escape and go back to Belgium. When he was asked again on cross-examination the reason that he filed in 2005, he said, in part, it was because of the incident that happened with my brother. He confirmed that again on 2004, that what happened to his brother made him scared. As I said before, the attack on his brother, and actually on his half-brother as well, were materially different than the severe incidents of persecution to his family. Before that, because his brother, unlike the other people who had been attacked in his family, was an expatriate expressing political opinions about the implementation of Sharia law from abroad and had returned to Nigeria, which is a circumstance that Mr. Asayaka would also be facing. Thank you very much. I think we've got your argument. Appreciate it. Case 0874960 Ezekiel v. Holder is submitted.
judges: Du, Gould, Smith